[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
STATE OF CONNECTICUT VS. ALBERT GREEN DATE OF SENTENCE: 30 July 1998 DATE OF APPLICATION: 30 July 1998 DATE OF APPLICATION FILED: (Not Dated) DATE OF DECISION: 26 March 2002
Application for review of sentence imposed by the Superior Court, Judicial District of New London at New London.
Docket Number CR97-240189.
Jeremiah Donovan, Esq. For the Petitioner.
Paul Narducci, Esq. For the State, of Connecticut.
 BY THE DIVISION
After a trial by jury the petitioner was convicted of the crime of Sexual Assault 1st, in violation of Conn. Gen. Stat. 53a-70; Kidnaping in violation of Conn. Gen. Stat. 53a-92 and Threatening in violation of Conn. Gen. Stat. 53a-62. The sentencing court imposed a sentence of forty-six years execution suspended after serving thirty-one and twenty-five years probation.
FACTS:
The victim lived with her two children. She and the petitioner, who is the father of her five year old son, had been involved in a seven year relationship. After approximately six years of living with the petitioner, the victim and her children moved to an apartment to which the CT Page 5295 petitioner did not have a key. Petitioner was not on the lease and did not take the responsibility for any of the utility bills. The petitioner, however, visited the apartment almost every day, and kept clothes and received some mail there.
Prior to August 31, 1997, the relationship between the petitioner and the victim had deteriorated to a point where they engaged in daily confrontations. The petitioner, despite the denials of the victim, was suspicious and jealous of other men, including boyfriends of the victim during her high school years. The victim was considering ending her relationship with the petitioner.
On August 31, 1997, while the children played and watched television, the victim and the petitioner went to the bedroom, where the petitioner, in an agitated condition, began to look through her telephone book. He told the victim that he was checking on her. He referred to a former boyfriend of the victim and said he believed that she was "cheating" and that he "wanted the truth." The petitioner procured a knife from the kitchen, returned to the bedroom and shut the door, stating that he was "going to find out the truth." The victim began to cry and continued to deny any involvement.
The petitioner declared that he did not believe her, that he was tired of her crying and whining. He stuffed two socks in the victim's mouth and tied a belt around her head and mouth to secure the socks. With the knife he had brought from the kitchen, he stabbed the mattress, about one foot from the victim, three times . . . He warned the victim that if he did not get the truth from her, he would cripple her by sticking the knife into her right leg above her knee and twisting it. He then placed the knife on the bed and told the victim to pick it up. After she refused, the petitioner retrieved the knife and told her to remove her pants. The victim did so, after which she was told to lie on the bed, to bring her knees to her chest and to put her arms to her side. The petitioner then tied her arms and legs together. While the victim was tied, the petitioner assaulted the victim by inserting a wire coat hanger and moving it back and forth, first in the victim's vagina, then in her rectum.
The victim struggled and, in so doing, broke away from the belt with which the petitioner had bound her. The victim begged the petitioner to stop. The petitioner responded that if he were in her position that he would also beg. The petitioner acknowledged that he had gone too far and "had to finish it." He stated that he was so angry that he was "ready to kill somebody."
The victim pleaded that if he loved her he would stop. The defendant, pausing, responded, "I'm going to give you a chance. Take the kids and go CT Page 5296 now." The victim, after cleaning blood from her body in the bathroom, put on a pair of jeans, gathered her children and left.
The victim went directly to her parents' house where she met her father in the yard and told him of the events that occurred. The father drove her to the hospital where she was examined by Russell Stokes, and expert in emergency medicine.
Stokes testified that his examination disclosed red marks and bruising on the victim's left wrist, which was consistent with her having been bound. His internal pelvic examination disclosed several recent scratches and lesions in the area of her vaginal opening. He also found internal scratches and the presence of blood in the victim's rectal area, leading him to conclude that they were caused by recent trauma. On cross-examination, Stokes testified that the injuries he described could not have been caused during sexual intercourse, particularly in the rectal area.
Counsel for the petitioner at the outset of his presentation emphatically stated that the crimes the petitioner committed were horrible. However, counsel felt the sentence imposed was not fair and was excessive. Backtracking somewhat, counsel said the crimes themselves sound worse on paper than when read objectively. He noted that the victim did not receive long lasting physical injuries and now allows the petitioner to see their children in prison. Counsel stated to the panel that bringing statistical comparisons for similar crimes was very difficult to find and present. Counsel also indicated that the sentence imposed was very high and that racial reasons may have played a part in that the victim was white and the petitioner black. He then asked the panel to reduce the sentence imposed.
The petitioner when he addressed the panel stated that he was a heavy drug user in the past. He indicated that the state offered him five years to serve for these offenses but that he refused the offer because he did not want to be known as a kidnapper or rapist in prison. He cited that he is a better man now and wants a chance to go home. To bolster that argument he pointed out that the victim has forgiven him and the five years were necessary to bring focus to his life and that he wants another chance to prove himself.
The attorney for the state soundly denounced the petitioner criminal acts for which he was convicted, stating that they were as cruel as they sounded and administered by the petitioner. Counsel noted that the petitioner did not take into consideration the long term mental health damage to the victim by these horrible acts. Counsel disputed the contention that they are less than horrible criminal acts. He felt the CT Page 5297 court focused on the petitioner's criminal history which indicates the petitioner has engaged in anti-social acts for a considerable period of time, that jail has had no effect on his conduct and that the court balanced his history with these despicable facts and properly sentenced the petitioner. He urged an affirmance of the sentence imposed. Counsel also dismissed the issue of racial discrimination raised by the petitioner's counsel as being specious, with no evidence in the record to support such an allegation.
Pursuant to Connecticut Practice Book § 43-23 et seq., the Sentence Review Division is limited in the scope of its review. The Division is to determine whether the sentence imposed "should be modified because it is inappropriate or disproportionate in the light of the nature of the offense, the character of the offender, the protection of the public interest and the deterrent, rehabilitative, isolative and denunciatory purposes for which the sentence was intended."
The Division is without authority to modify a sentences except in accordance with the accordance with the provisions of Connecticut Practice Book § 43-28 et seq., and Connecticut General Statute §51-94 et seq.
Counsel for the petitioner during his argument raised the specter of racial discrimination in this sentence. When queried by the panel it was discovered that the victim was white and the petitioner black. When pressed by the panel to see if the sentencing judge was the source of discrimination counsel quickly distanced himself from such a thought.
In our society the issue of racial disparity within the prison structure is a highly sensitive one. When counsel raises the specter of inappropriate sentencing based upon race he should be prepared to support his arguments. Anything short of that breeds suspicions where none may or should exist. Looking closely at the track record of the petitioner, his inability to conform to society and prosper crime free, coupled with the horrendous nature of the acts themselves, we find that the race of the victim played no part in the sentencing.
THE SENTENCE IS AFFIRMED.
Norko, J., Klaczak, J. and Miano, J. participated in this decision.